SEALED

FILED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

AUG 14 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| INFORMATION ASSOCIATED WITH AREED8821@YAHOO.COM THAT IS STORED AT PREMISES CONTROLLED BY YAHOO HOLDINGS, INC. | ) ) ) ) ) |

Case No.

2:17 - SW - 0725 — EFB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Sexual Exploitation of Minors |
| 18 U.S.C. § 2252 | Activities Relating to Material Involving the Sexual Exploitation of Minors |
| 18 U.S.C. § 2252A | Activities Relating to Material Involving Child Pornography |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jose Ochoa, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.
Date: 8-14-217

_____
*Judge's signature*

City and state: Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR A SEARCH WARRANT

I, Jose Ochoa, being duly sworn on oath, depose and state as follow:

1.     I am a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement, Homeland Security Investigations (HSI), presently assigned to the Office of the Assistant Special Agent in Charge, Sacramento, California. I received training as a Special Agent (SA) at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Immigration Officer Basic Training Course, Police Training, and the Criminal Investigator Training Program. I am currently assigned to Group 3 which investigates federal violations involving Intellectual Property Rights, Internet Crimes, and Financial Crimes. I am also assigned, part-time, to the Tax Recovery and Criminal Enforcement task force, which investigates underground economy schemes. My duties as a Special Agent include executing and serving federal search warrants, subpoenas and summonses, conducting interviews, collecting evidence, providing grand jury testimony, and investigating violations of federal law. I have applied for and received anticipatory search warrants relating to narcotic investigations and I have been the affiant on search warrants within the Eastern District of California for evidence of crimes of human smuggling and child pornography. I have obtained California State search warrants and I have presented cases to the Districts Attorney's Office for prosecution related to California Penal Code laws. I have been employed as a Special Agent with HSI for fourteen (14) years.

2.     I have received training in the area of child pornography and child exploitation investigations, and as part of my duties have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C.§ 2256(2)) in all forms of media, including computer media. I have participated in numerous child exploitation search warrants (both federal and with the Sacramento Valley Internet Crimes Against Children Task Force) involving the use of computers and Internet, and have assisted in the

1   gathering of evidence during execution of those warrants. I have also assisted with the

2   interviews of individuals suspected of receiving and/or distributing child pornography. I

3   am authorized to investigate criminal violations relating to child exploitation and child

4   pornography including violations pertaining to the illegal production, distribution, receipt

5   and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

6       3.      Your affiant submits this application and affidavit under Rule 41 of the

7   Federal Rules of Criminal Procedure in support of a search warrant authorizing the

8   search of information associated with the email address **areed8821@yahoo.com** that is

9   stored at premises controlled by Yahoo Holdings, Inc. ("Yahoo"), an email services

10  provider headquartered at 701 First Avenue, Sunnyvale, CA, CA 94089 (hereinafter

11  "**TARGET ACCOUNT**").

12      4.      The information to be searched is described in the following paragraphs and

13  in Attachment A. I anticipate executing this warrant under the Electronic

14  Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

15  2703(c)(1)(A), by using the warrant to require Yahoo to disclose to the government copies

16  of the information (including the content of communications) further described in Section

17  I of Attachment B. Upon receipt of the information described in Section I of Attachment

18  B, government-authorized persons will review that information to locate the items

19  described in Section II of Attachment B.

20      5.      The affiant believes that located within the **TARGET ACCOUNT** there is

21  evidence, fruits, and instrumentalities relating to the knowing possession, distribution,

22  and transportation of child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and

23  2252A.

24      6.      The statements in this affidavit are based in part on information provided by

25  Detective Constable Timothy Brown of the Ontario Provincial Police Child Sex Crimes

26  Unit in Canada, HSI SA Philipp Maurer, HSI SA Ryan Vazquez, and other law

27  enforcement agents, as well as my own investigation of this matter. Since this affidavit is

28  being submitted for the limited purpose of securing a search warrant, I have not included

each and every fact known to me concerning this investigation. I have set forth only the

facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of a violation of 18 U.S.C. §§ 2251, 2252 and 2252A are presently located in the **TARGET ACCOUNT**. Furthermore, there have been no other attempts that I am aware of to obtain the fruits, evidence and instrumentalities sought in this warrant directly from the **TARGET ACCOUNT**.

**STATUTORY AUTHORITY**

7.      This investigation concerns alleged violations of 18 U.S.C. §§ 2251, 2252, and 2252A relating to the sexual exploitation of minors and visual depictions of such exploitation. Those violations include:

a.  18 U.S.C. § 2251(a)(1) prohibits, *inter alia*, employing, using, persuading, inducing, enticing, or coercing a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct if the person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce, if the depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce.

b.  18 U.S.C. § 2252(a)(1) prohibits knowingly transporting or shipping, using any means or facility of interstate or foreign commerce, or in or affecting interstate commerce, by any means including by computer or mail, any visual depiction of a minor engaging in sexually explicit conduct.

c.  18 U.S.C. § 2252(a)(2) prohibits knowingly receiving or distributing any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproducing any visual depiction for distribution

3

using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, provided the visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

d. 18 U.S.C. § 2252(a)(4) prohibits knowingly possessing or knowingly accessing with intent to view, one or more books, magazines, periodicals, films, videotapes or other matter which contain any visual depiction that has been mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate of foreign commerce, or which were produced using materials which have been mailed or so shipped or transported, by any means including by computer, in interstate or foreign commerce, or that were produced using materials that had traveled in interstate or foreign commerce, if the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct.

e. 18 U.S.C. § 2252A criminalizes similar conduct regarding the transportation, distribution, and possession of child pornography, as defined at 18 U.S.C. § 2256(8). This is distinct from 18 U.S.C. § 2252, which criminalizes conduct involving visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(1), (2), and (5).

## DEFINITIONS

8.     For purposes of this warrant, relevant specialized and technical terms are defined as follows:

a. Minor is defined as any person under the age of eighteen years.  18 U.S.C. § 2256(1).

b. Sexually explicit conduct means actual or simulated - (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii)

4

masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2).

c. Visual depiction includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image. 18 U.S.C. § 2256(5).

d. Producing means producing, directing, manufacturing, issuing, publishing, or advertising. 18 U.S.C. § 2256(3).

e. Child pornography means, *inter alia*, any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; or (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2256(8).

f. Child erotica are images depicting minors in the nude or scantily clad in age-inappropriate clothing, striking sexually provocative poses intended to illicit a sexual response. The images may not meet the definition of sexually explicit conduct, but are often found in child pornography collections.

g. The term "computer" is defined under 18 U.S.C.§ 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to operating in conjunction with such device."

h. Computer hardware consists of all equipment that can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data processing devices (such as central processing units, self-contained laptop and notebook computers, hand-held electronic

5

organizers, personal digital assistants, and WebTV units), removable media, internal and external storage devices (magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices), and related communication devices such as modems, cables, connectors, programmable telephone dialing or signaling devices, and electronic tone-generating devices, and any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locations.

i.   A system peripheral is a piece of equipment that sends data to, or receives data from, a computer. Keyboards, mouses, cameras, webcams, video cameras, printers, scanners, plotters, video display monitors, and certain types of facsimile machines are examples of peripherals.

j.   Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

k.   Computer-related documentation consists of written recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

l.   Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or pass-phrase (string of alphanumeric characters) usually operates as a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, cards, and circuit boards. Data security software or digital code may include a programming

6

code that creates "test" keys or "hot" keys, which perform certain preset security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

m. Storage media includes any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information. Examples of storage media include diskettes, CD-ROMs, DVDs, magnetic tapes, ZIP disks, JAZ disks, thumb drives, and EPROMS.

n. The Internet is defined as a non-commercial, worldwide network of computers. It is a self-governing network devoted mostly to communication and research and has millions of users worldwide. The Internet is not an online service but a collection of tens of thousands of computer networks, online services, and single user components.

o. Internet Protocol (IP) is the primary protocol upon which the Internet is based. It allows information to travel through multiple networks on the way to its final destination.

p. An IP address is a unique number assigned to every computer directly connected to the Internet (for example 190.25.240.1). The IP address consists of four parts, is unique to each machine, and can be used to identify a particular machine on the network, at a particular time and date.

q. An Internet Service Provider (ISP) is a business that allows a user to connect to the Internet through its computers for a fee. Internet Service Providers usually provide an Internet connection, an electronic mail (e-mail) address, and sometimes Internet browsing software. A user also may connect to the Internet through a commercial online service such as CompuServe or America Online (AOL). With this service, users may also have access to other features such as chat rooms and searchable databases.

r. "Domain Name" refers to the common, easy to remember names   associated with an Internet Protocol address. For example, a domain name of

"www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and, .edu for educational organizations. Second level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

s. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

t. "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

u. A "JPEG" is a graphic image file. Other known graphic image files include, but are not limited to, "GIF," "TIFF," RAW," and "BMP."

v. An "MPEG" is a video image file. MPEG files are generally larger than JPEG files and require the user to have a computer with sufficient processor

speed, internal memory, and empty hard disk space.  MPEG viewer software is also needed to play the files.

w. The Uniform Resource Locator (URL) is the address of a resource or file located on the Internet, also called a "domain name."

x. A chat room is a site on the Internet where a number of users can communicate in real time. A chat room is typically dedicated to a particular topic. Users type their messages with a keyboard and the entered text will appear on the monitor, along with the text of the other chat room visitors. Individuals in a chat room have the ability to invite other users within the chat room to private communication sessions which are thereafter strictly between the two users.

y. A webcam is a video capture device connected to a computer or computer network.  The video captured by the device is broadcast over the Internet to be viewed by other Internet users in real time.  The term "Webcam" can also be used to describe a file transfer between two individuals on the Internet. An individual playing a video file saved to their own computer can broadcast the video to another user's computer screen through an Internet connection.

z. Screen capture software is a software application that copies what is currently displayed on a user's computer screen to an electronic file or printer. The electronic file can then be viewed as a video. This video depicts everything that was displayed on the original user's computer screen. This software can record real time chat sessions, key strokes, mouse movement, video and audio displayed on the user's screen.

aa. In addition, as used in this affidavit, "records," "documents," and "materials" include items in whatever form and by whatever means they may have been created and/or stored.  This includes any handmade, photographic, electrical, electronic, and magnetic forms.  It also includes items in the form of computer hardware, software, documentation, passwords, and data security devices.

## KIK MESSENGER APPLICATION

9.    The Kik Messenger application is primarily a social media mobile device platform designed and managed by Kik Interactive Incorporated, a Waterloo, Canada based company, for the purpose of mobile messaging and communication.  To use this application, a user downloads the mobile messaging application via an applications service such as the Google Play Store, Apple iTunes, or other similar mobile application provider.  Once downloaded and installed, the user is prompted to create an account and a username.  This username will be the primary account identifier.  The user also has a display name, which will be what other users initially see when transmitting messages back and forth.  As part of the account creation process, Kik users are asked to supply a valid email address, create a password, provide an optional date of birth, and user location.  The user also has the option of uploading a "profile avatar" photo that is seen by other users.  Once the Kik user has created an account, the user is able to locate other users via a search feature.  The search feature usually requires the user to know the intended recipient's username.  Once another user is located or identified, Kik users can send messages, images, and videos between the two parties.

10.    Kik Messenger also allows users to create chat rooms of up to 50 people for the purpose of communicating and exchanging images and videos.  These rooms are administered by the creator who has the authority to ban and remove other users from the created room.  According to Kik Messenger, more than 40% of the Kik users chat in "groups" and approximately 300,000 new groups are created every day.  These groups are frequently created with a "hashtag" allowing the group or chat to be identified more easily.  Once the group or chat is created Kik users have the option of sharing the "link" with all of their contacts or anyone they wish.

11.    Kik Messenger users frequently advertise their Kik usernames on various social networking sites in order to meet and connect with other users.  In some cases, Kik also provides various avenues, such as dating sites and social media applications, for meeting other users.  HSI undercover agents have observed in various chats that many of the users stated they felt safe using Kik Messenger as a means of trading child

pornography and for other illegal activities due to the fact that Kik is a Canadian based company and not subject to the same United States laws. HSI undercover agents have noted messages posted in Kik Messenger chat rooms relating to the enforcement, deletion, or banning of users and rooms by Kik Messenger for the purpose of exchanging or distributing child pornography. HSI agents noted the comments to include the continued creation of new rooms and new user accounts to circumvent Kik Messengers enforcement efforts.

12.     In November 2015, HSI SA Phillip Maurer received copies of evidence and investigative reports authored by Ontario Provincial Police (OPP) Child Sex Crimes Unit detectives regarding the investigation of KIK account "Nova75". The reports were provided in response to a request for assistance from Ontario Provincial Police (OPP) Child Sex Crimes Unit regarding a suspect who enticed a 14 year old mentally disabled child victim in Canada to produce and provide sexual exploitation photographs and videos of herself via the Internet, specifically using the KIK Messenger service and using the KIK account "Nova75". The lead investigator for the OPP was Detective Constable (D/C) Timothy Brown who has served as a sworn police officer in the Province of Ontario, Canada, since September 4, 2002, and as a Detective Constable for the City of Kawartha Lakes / Haliburton Highlands OPP Criminal Investigation Unit between November 2007 and June 2015. On June 8, 2015, D/C Brown became a member of the OPP Child Sexual Exploitation Unit. The following summary regarding the Canadian Investigation of KIK Account "Nova75" is derived from the "Will-Say Statement" of D/C Timothy Brown.

## **ONTARIO PROVINCIAL POLICE (OPP) INVESTIGATION**

12.     On July 6, 2015, D/C Brown was assigned to follow-up with a 'child luring' investigation that had been forwarded by D/C Bezeau of the OPP in Lambton County, Ontario Providence, Canada. D/C Brown reviewed all reports in relation to the initial investigation and identified the following investigative history:

> a. MINOR 1 (DOB: XX/XX/2000) and MINOR 2 (DOB: XX/XX/2005) were reported to the Lambton County OPP as victims of online luring by their parents / guardians.

11

b. MINOR 1 was 14 years old, but suffered from Fetal Alcohol Syndrome and operated at the age of a 10-11 year-old. She was a Crown Ward of the Children's Aid Society and had been living in the same foster home for the past nine years.

c. On June 28, 2015, MINOR 1 and her foster mother visited the home of nine-year-old MINOR 2 and her mother in Lambton County.

d. While visiting, MINOR 1 communicated with an unknown male using the Kik application on her iPod. The male's Kik username was A_ARON. MINOR 1 had been communicating with the same unknown male for a period of months using the NextPlus application.

e. A_ARON requested that MINOR 1 forward nude pictures of herself and MINOR 2, specifically pictures of their vaginas and bodies. A_ARON further requested that the girls lick and kiss each other and have sex;

f. MINOR 1 partially complied with the request and forwarded nude pictures of herself and MINOR 2.

g. A_ARON sent a nude photograph of himself (between nose and knees) to the girls. The girls believed the male was an adult because he had pubic hair on his genitals.

h. MINOR 2 reported the incident to her mother the following day who in turn reported it to the Lambton County OPP.

i. Lambton County OPP responded. MINOR 1's mother signed a consent form authorizing the search of MINOR 1's iPod and HTC cellular telephone. A Kik 'Preservation Request' was also completed for Kik username 'A_ARON' as well as MINOR 1's Kik username.

13.    On July 6 and 7, 2015, D/C Brown accessed and reviewed the contents of the iPod and HTC cellular telephone. D/C Brown prepared a report in relation to the contents of the devices, including screen capture images of all communications. The report can be summarized as follows:

a. iPod – S/N CCQJW93GF96T

i.   Kik communications were located between MINOR 1 and the unknown male;

ii.  The unknown male's KIK username was Nova75 and his display name was A_ARON;

iii. Kik communications between MINOR 1 and Nova75 were exchanged between June 19 and 29 2015;

iv.  Nova75 repeatedly requests MINOR 1 send nude photos and attempts to foster a relationship, referring to her as "kitten".

v.   Thirteen images sent by MINOR 1 were visible in the Kik communications. The images include 'selfies', MINOR 1's nude chest (no breast development), MINOR 1 wearing only underwear, MINOR 1's nude buttocks, and MINOR 2 and MINOR 1 standing in their pajamas.

vi.  The Kik conversation supported the statements provided by MINOR 2 and MINOR 1, specifically that 'Nova75' requested they perform sexual acts and forward images and videos.

vii. Images and video save in the 'photos' folder included the same images recovered from the Kik messages as well as:

    1. Clothed 'selfies' of MINOR 1,

    2. MINOR 2 laying on a bed with exposed stomach and chest,

    3. MINOR 1 kissing MINOR 2's chest,

    4. Full body nude of MINOR 1,

    5. Close up shot of vagina (x2),

    6. 5 second video of MINOR 1 and MINOR 2 kissing.

b.   HTC cellular telephone – IC4115B

i.   Kik communications were located between MINOR 1 and the unknown male that occurred from January 1, 2015, through February 1, 2015.

  ii. The unknown male's Kik username was Nova75 and his display name was A_ARON.  His Kik profile picture was of a warrior dressed in black.

  iii. The communications allude to a previous relationship, prior to January 1, 2015.

  iv. In the communications, Nova75 confirmed that he was three hours behind MINOR 1.

  v. During the communications, Nova75 requested nude photos of MINOR 1.

  vi. The Kik conversation included eight images forwarded by MINOR 1, including: close-up vagina shots and nude / clothed 'selfies'.

  vii. Nova75 sent a picture of his erect penis.

  viii. A video (1:28) saved in the 'Kik Video' folder showed MINOR 1 setting up the camera on a desk then disrobing until nude.

15. On July 7, 2015, D/C Brown received information from KIK Interactive Inc. indicating that the last IP address assigned to username Nova75 allocated to the United States.

16. On July 28, 2015, D/C Brown obtained a Canadian production order for information relating to KIK users Nova75 and MINOR 1's Kik username.  On September 11, 2015, KIK provided the following information/data in relation to the production order:

  a. Nova75's last IP geolocation was in the Sacramento, CA area;

  b. The e-mail address associated with Nova75 was areed8821@yahoo.com;

  c. The return included 37 photos of MINOR 1 and MINOR 2 and photos of an unknown male (believed to be suspect).

## HSI SACRAMENTO INVESTIGATION

17. On November 9, 2015, SA Maurer accessed a secure law enforcement cloud server utilizing the username and password provided by the OPP through HSI Toronto, accessed the evidence file utilizing the password provided, and downloaded the contents of the file.  The file contained a chat log, an IP address log, a document detailing user

14

information for Kik user "Nova75", and numerous photo and video files. The file was transferred to a CD (hereinafter OPP EVIDENCE CD), sealed in an evidence bag, and secured in the HSI Sacramento evidence area designated for storage of media containing child pornography.

18.     A review of the document detailing user information for Kik user "Nova75" associated the account to areed8821@yahoo.com showed the following names were associated under the "ACCOUNT_INFO" and "FIRST_NAME" section: "A-", "At", "B-", "Kik", and "Tell". The following names were associated under the "ACCOUNT_INFO" and "LAST_NAME" section: "Aron", "Day", "Reed", "home", and "work". The following information was noted under the "USER_LOCATION" section: "ip: 104.220.11.44"

19.     A review of the IP address log revealed that the Nova75 Kik account had been accessed from the following IP addresses from January 1, 2015, to June 30, 2015: 76.14.100.6, 67.186.228.171, 63.251.193.4, 104.220.11.44, and five hundred fifty six (556) IP addresses that began with the prefix 66.87.

20.     Open source queries at dnsstuff.com for IP addresses that begin in 66.87 shows that the range from 66.87.0.0 to 66.87.255.255 belongs to Sprint Communications Inc. These IP addresses were used throughout the time period to access the Nova75 Kik account, and indicate that the user of Nova75 was operating a cellular device on the Sprint Network.

21.     Open source queries at dnsstuff.com for IP address 63.251.193.4 resolved to Internap Network Services Corporation and further to "INAP-LAX-WESTFIELD-16778". This IP address was used to access the Nova75 Kik account on January 14, 2015.

22.     Open source queries at dnsstuff.com for IP address 67.186.228.171 resolved to Comcast Cable Communications. This IP address was used to access the Nova75 Kik account between June 26, 2015, and June 29, 2015.

23.     Open source queries at dnsstuff.com for IP address 76.14.100.6 resolved to WAVE and further to "WAVE-ROCKLIN-3". This IP address was used to access the Nova75 KIK account between January 1, 2015, and January 26, 2015.

15

24. Open source queries at dnsstuff.com for IP address 104.220.11.44 resolved to Astound Broadband LLC. This IP address was used to access the Nova75 KIK account between January 27, 2015, and June 30, 2015. Open source queries on Google indicated that Astound Broadband merged with WAVE Broadband.

25. On November 10, 2015, SA Maurer served DHS Summons upon: (1) KIK for subscriber and IP history for "Nova75", (2) Comcast for subscriber and IP history for the aforementioned Comcast IP addresses, (3) Yahoo for subscriber and IP history for "areed8821@yahoo.com", and (4) Wave Broadband for subscriber and IP history for the aforementioned Wave/Astound IP addresses.

26. On November 11, 2015, SA Maurer received a response from Kik that once again associated the "Nova75" account to email address areed8821@yahoo.com. Additionally, records showed that the account was created on January 29, 2012, and the most recent access to the KIK "Nova75" account occurred on October 13, 2015, October 19, 2015, and October 20, 2015, from IP address 104.220.11.44. As previously stated, IP address 104.220.11.44 resolved to Astound Broadband LLC which has merged with WAVE Broadband.

27. A response from WAVE Broadband indicated that the account associated with that IP address 104.220.11.44 was registered in the name of Aaron Reed with an email address of anncornett8@yahoo.com and a service address of 6375 Rustic Hills Dr., Rocklin, CA 95677. The account was opened on December 3, 2013, and was still active.

28. As previously reported, IP address 67.186.228.171, which resolved to Comcast Cable Communications, was used to access the Nova75 Kik account between June 26, 2015, and June 29, 2015. In response to the subpoena, Comcast provided the following subscriber information related to the IP address and dates used:

      a. Subscriber Name: Brenda L Reed

      b. Service Address: 935 S 880 W, Payson, UT 84651-3115

      c. Telephone #: 801-465-3065

      d. Type of Service: High Speed Internet Service

      e. Account Number: 8495444530338867

f.   E-mail User Ids:  reedlee3

29.   On November 24, 2015, SA Maurer received the following subscriber information from Yahoo in response to the legal demand concerning areed8821@yahoo.com:

a.   Login Name: areed8821

b.   Yahoo Mail Name: areed8821@yahoo.com

c.   Alternate Communication Channels: exiondranzer@yahoo.com   /   9162761817

d.   Registration IP address: 75.42.73.104

e.   Account Created (reg): Tue Aug 11 03:58:12 2009 GMT

f.   Other Identities: areed8821 (Yahoo! Mail)

g.   Full Name Mr Aaron Reed

h.   Zip/Postal Code: 95677

i.   Account Status:  Active

30.   On November 30, 2015, SA Maurer served a DHS Summons upon Sprint Corporation for phone number 916-276-1817—the phone number associated to areed8821@yahoo.com by Yahoo.  On December 6, 2015, SA Maurer received a response from Sprint in response to the legal demand.  The response from Sprint indicated the following subscriber information:

a.   Subject Number:  9162761817

b.   Account Establish Date:  11/19/2009

c.   Account Expiration (Cancel) Date:  Active through Date Searched

d.   Account Billing Address(es):   Aaron Reed

6375 Rustic Hills Dr

Rocklin, CA 95677.

30.   On February 3, 2016, your affiant examined the chat log, and photo and video files provided by the OPP.  I reviewed the OPP EVIDENCE CD associated with KIK user name "Nova75".  This CD contained two folders.  The first folder reviewed contained

6 video files, of which 5 depict child pornography. The following three video files were examined by your affiant:

      a.  1434412314825-b8eb9183-4c0b-80b4-b8e0301ccaa2.mpg

      b.  1434412792939-3f58f33a-bd7a-4802-92f7-edd98bb9e.mpg

      c.  1434413930819-e651e8ad-d3af-4dac-a6ea-cbc2651cd173.mpg

31.    Video file 1434412314825-b8eb9183-4c0b-80b4-b8e0301ccaa2.mpg is approximately 14 seconds in length, and depicts a nude prepubescent girl inserting her finger in her vagina.

32.    Video file 1434412792939-3f58f33a-bd7a-4802-92f7-edd98bb9e.mpg is approximately 15 seconds in length, and depicts a nude prepubescent girl (same girl as in the video file above) inserting her finger in her vagina.

33.    Video file 1434413930819-e651e8ad-d3af-4dac-a6ea-cbc2651cd173.mpg is approximately 15 seconds in length, and depicts a nude prepubescent girl inserting a spoon in her vagina.

34.    This CD also contained a separate folder with approximately 55 image files, of which approximately 11 depicted child pornography. The following two image files were examined by your affiant:

      a.  1433719009480-bb115c5e-c5d2-4fb1-9517-3197d10cadce.jpg

      b.  143557973074-7fb452b8-515c-4062-b03c-446458af6121.jpg

35.    Image file 1433719009480-bb115c5e-c5d2-4fb1-9517-3197d10cadce.jpg depicts a nude prepubescent girl and the camera is focused on the vaginal area.

36.    Image file 143557973074-7fb452b8-515c-4062-b03c-446458af6121.jpg depicts a prepubescent girl that is nude from the waist down and the camera is focused on the vaginal area.

37.    On February 10, 2016, the Honorable Carolyn K. Delaney authorized a search warrant for 6375 Rustic Hills Drive, Rocklin, CA 95677 (2:16-SW-0061). HSI agents executed the search warrant on February 17, 2016.

38.    During the search of the home, agents seized electronic devices and conducted interviews. Aaron Reed was interviewed and admitted that he had engaged in

sexually Kik messaging, including pictures and videos. Reed could not remember employing the username Nova75, but said it was possible since he owns a 1975 Chevrolet Nova.[1] HSI Agents showed Reed a copy of the photo obtained from the OPP depicting a nude male standing in a shower, which was sent to MINOR 1. Reed acknowledged it was him and that he had sent the picture, but could not remember to whom he had sent it. Reed also identified photos of MINOR 1 and MINOR 2 (fully clothed) as photos he had seen previously that were sent to him. He admitted that the minors depicted in the photos were not 18 years old. Reed stated that he had probably received 10 photos and videos, but did not keep track. Reed admitted that he asked MINOR 1 to do things Reed liked, including inserting objects into certain body cavities and to use pens and markers to play with herself. Reed admitted MINOR 1 sent him "body shots and vaginal shots."

39.     Reed made a written statement in which he stated he was sorry and that he made a mistake in judgment. Reed said he was in a dark place and was not proud of what he did.

40.     During the interview, HSI agents learned that Reed had recently obtained a new phone and that he no longer had the phone with which he had communicated with MINOR 1. A review of the content of Reed's new phone showed that he was currently engaged in conversations with minor females. In one conversation, Reed asked the minor to send him photos and sent a photo of his penis.

41.     Also during the search of the home, HSI agents interviewed Aaron Reed's brother Spencer Reed. Spencer and Aaron shared a bedroom at the home. Spencer admitted that he had engaged in inappropriate chats on Kik with individuals who identified themselves as younger than 18. Spencer admitted he had exchanged pictures with an underage girl.

## BACKGROUND CONCERNING E-MAIL

42.     In my training and experience, I have learned that Yahoo provides a variety of on-line services, including electronic mail ("email") access, to the public. Yahoo allows

---

[1] HSI confirmed Reed was restoring a 1975 Chevrolet Nova at the Rustic Hills Drive residence.

subscribers to obtain email accounts at the domain name yahoo.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Yahoo. During the registration process, Yahoo asks subscribers to provide basic personal information. Therefore, the computers of Yahoo are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo subscribers) and information concerning subscribers and their use of Yahoo services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

43.     A Yahoo subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Yahoo. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

44.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities

45.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of

service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

46. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

47. This application seeks a warrant to search all responsive records and information under the control of Yahoo, a provider subject to the jurisdiction of this court, regardless of where Yahoo has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Yahoo's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

48. It is possible that Yahoo stores some portion of the information sought outside of the United States. In <u>Microsoft Corp. v. United States</u>, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody

1   and control that are stored outside the United States. As the Second Circuit decision is

2   not binding on this court, I respectfully request that this warrant apply to all responsive

3   information—including data stored outside the United States—pertaining to the

4   identified account that is in the possession, custody, or control of Yahoo.  The government

5   also seeks the disclosure of the physical location or locations where the information is

6   stored.

## CHARACTERISTICS COMMON TO PERSONS WHO PRODUCE AND POSSESS CHILD PORNOGRAPHY

9        49.    Based upon my training and experience, I am aware that the following

10   characteristics are generally found in varying combinations in people who produce,

11   receive, possess, distribute, or transport child pornography:

     a.   These people view children as sexual objects.

     b.   These people collect sexually explicit and other erotic images of minors which they use for their own sexual gratification and fantasy.

     c.   These people rarely, if ever, dispose of sexually explicit images of minors because the images are treated as prized possessions.  They store such images in different formats including photos, printouts, magazines, videotapes, and forms of digital media such as hard drives, diskettes, and CD-ROMs, or online.

     d.   These people may use sexually explicit images of minors as a means of reliving fantasies or actual sexual encounters.  They also use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images to other people with similar interests.

     e.   If someone has had sexual contact with a minor, it is likely such person has visual depictions of minors with whom they have had sexual contact.  If a picture depicting a minor in the nude is taken or obtained by such a person, there is a high probability the minor was used to produce sexually explicit images to be traded with people with similar interests.

f.  Child pornography collectors who acquire sexually explicit images of minors from the Internet will typically bookmark the locations (i.e. Web sites, news groups and other locations) on the Internet from which they accessed child pornographic images.  By bookmarking such locations, these collectors can readily gain access to such sites.

g.  Child pornography collectors also tend to collect child erotica because it is more readily available, partially satisfies their sexual fantasies, and is often intermixed with child pornography on the Internet.

h.  Child pornography collectors often will collect graphic sexual stories relating to the sexual abuse of children, as they too are used to satisfy their sexual fantasies

50.   I know from my training and experience that individuals who receive, possess, distribute, and transport child pornography often use the Internet to increase their access to images.  The Internet provides users with access to Web sites and social networking sites from which images of child pornography can be downloaded and uploaded.  In addition, the Internet allows communications with others who express an interest in child pornography and permits the transfer of data and images across state and foreign boundaries.  Individuals who use the Internet can communicate electronically by using e-mail.  E-mail messages can contain text, data, or graphic images.  This type of communication is private in that it is directed from one Internet user to another.  Internet users can also communicate and trade images of child pornography using Instant Messaging.  Instant Messaging is "real time" communication in that the persons communicating are engaging in online dialog.  This means of communication, like e-mail, is private in that it is one Internet user communicating specifically, and exclusively, with another.  I know that Yahoo offers instant messaging to its customers.

51.   I believe there is a fair probability, based upon the conduct to which Aaron Reed has admitted and a review of his Kik conversations with MINOR 1 and other minors, that he has received other images of child pornography or discussed producing, transporting, and possessing child pornography using the **TARGET ACCOUNT**.

## ATTRIBUTION EVIDENCE

30.     As explained herein, information stored in connection with an email account also provides crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored in the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

31.     A Preservation Letter was not sent to Yahoo. In general, an email that is sent to a Yahoo subscriber is stored on Yahoo servers until the subscriber deletes the email. A Yahoo email account can be configured to also store sent messages. If the

1  subscriber does not delete stored messages, the messages remain on Yahoo servers

2  indefinitely.

3       32.    User attribution evidence will be particularly important in this

4  investigation.  HSI agents have reviewed chat logs and images obtained from MINOR 1's

5  electronic devices that show she was engaged in communications over Kik in which she

6  sent sexually explicit photos to a Kik user identified as Nova75.  Information obtained

7  from Kik indicated this username was registered with the areed8821@yahoo.com email

8  address.  Information obtained from Yahoo supports the inference that Aaron Reed

9  operated this email account.  However, because HSI agents learned that Spencer Reed

10 was also engaged in similar Kik conversations, it is necessary to confirm that the email

11 account used to register the Nova75 username with Kik was controlled and operated by

12 Aaron Reed, not Spencer Reed or some other unknown third party.  The undersigned

13 expects to find information in the **TARGET ACCOUNT** identifying the person who

14 owned and operated the account during the relevant time period, including email

15 messages, contact lists, calendar entries, and IP or other login information.  The

16 undersigned also understands that upon registration Kik will send a confirmation email.

17 As such, evidence that Aaron Reed registered the Nova75 account will remain in the

18 account until and unless deleted.  This application seeks to search for attribution

19 evidence within the **TARGET ACCOUNT** from January 1, 2012, the month the Nova75

20 Kik account was created, through October 31, 2015, the last month the account was

21 accessed, in addition to any direct evidence of the production, possession, or receipt of

22 child pornography.  Such evidence will be invaluable to establishing the identity of the

23 individual communicating with MINOR 1 and would be exculpatory if such evidence

24 indicates it was not Aaron Reed.

25       33.    I anticipate executing this warrant under the Electronic Communications

26 Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using

27 the warrant to require Yahoo to disclose to the government copies of the records and

28 other information (including the content of communications) particularly described in

Section I of Attachment B.  Upon receipt of the information described in Section I of

1  Attachment B, government-authorized persons will review that information to locate the

2  items described in Section II of Attachment B.

3  **REQUEST FOR SEALING**

4      34.    It is respectfully requested that this Court issue an order sealing, until

5  further order of the Court, all papers submitted in support of this application, including

6  the application and search warrant.  I believe that sealing this document is necessary

7  because the items and information to be seized are relevant to an ongoing investigation

8  run by HSI.  As such, premature disclosure of the contents of this affidavit and related

9  documents may alert individuals associated with the TARGET ACCOUNT.  This could

10  lead to the destruction of evidence, which would have a significant and negative impact

11  on this investigation

12  **CONCLUSION**

13      35.    Based on the aforementioned factual information, your affiant respectfully

14  submits that there is probable cause to believe that on the computer systems in the

15  control of Yahoo there exits evidence, instrumentalities, contraband and/or fruits of a

16  crime.

17      I swear under penalty of perjury that the foregoing information is true and correct, to

18  the best of my knowledge, information and belief.

19

20  Jose Ochoa

21  Special Agent
   Homeland Security Investigations

22  Approved as to form.

23

24  Jeremy Kelley
   Assistant United States Attorney

25  Subscribed and sworn to before me this _14th_ day
   of August, 2017

26

27  Hon. Edmund F. Brennan
   United States Magistrate Judge
   Eastern District of California
   Sacramento, California

28

1

2

## ATTACHMENT A

## LOCATION TO BE SEARCHED

3   This warrant applies to information associated with areed8821@yahoo.com that is

4   stored at premises owned, maintained, controlled, or operated by Yahoo Holdings, Inc., a

5   company headquartered at 701 First Avenue, Sunnyvale, CA, 94089.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT B

## ITEMS TO BE SEIZED

### I. Information to be disclosed by Yahoo Holdings, Inc. ("Yahoo")

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo, including any communications, records, files, logs, or information that has been deleted but is still available to Yahoo, Yahoo is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. The contents of all emails, chats, or stored communications associated with the account, including stored or preserved copies of emails or chats sent to and from the account, draft emails, deleted emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email or chat;

b. All records or other information regarding the identification of the account, including full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative or secondary email addresses, methods of connecting, log files, and means and source of payment (including any credit or bank account numbers);

c. The types of service utilized.

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files.

e. Any and all stored images or video linked to the services, to include metadata included by the customer.

f.   Internet search and browsing history and location history associated with the account.

g.   All records pertaining to communications between Yahoo and any person regarding the account, including contacts with support services and records of actions taken.

h.   For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

## II. Information to be seized by the government

The following items, which may be evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252 and 2252A and/or contraband, involving TARGET ACCOUNT, Aaron REED and occurring between January 1, 2012, and October 31, 2015, are to be searched and/or seized wherever they may be stored or found at the location to be searched and in any form that they may be stored or found:

1.   Evidence of ownership of control of specified email, areed8821@yahoo.com;

2.   Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

3.   The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

4.   Any evidence related to the registration and operation of Kik accounts or other messaging applications;

5.   The identity of the person(s) who communicated with the user ID areed8821@yahoo.com, about matters relating to the possession, distribution or production of child pornography;

6.   All screen names, user names, and true names of others who may have operated as the source of child pornography or visual depictions of minors engaged in

sexually explicit conduct, in any format, downloaded and possessed by the person(s) operating the TARGET ACCOUNT;

7. Any items, images, documents, communications, records, and information related to the distribution, receipt or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct;

8. Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form

9. Any child erotica;

10. Any information pertaining to any individual's interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica;

4

SEALED

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| INFORMATION ASSOCIATED WITH ) | Case No. 2:17-SW-0725-EFB |
| AREED8821@YAHOO.COM THAT IS STORED AT ) | |
| PREMISES CONTROLLED BY YAHOO HOLDINGS, ) | |
| INC. ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____August 28, 2017_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 8-14-2017 at 10:00 A.M.

City and state:     Sacramento, California                    Edmund F. Brennan, U.S. Magistrate Judge
                                                                                      *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                    Date

1

2

## ATTACHMENT A

## <u>LOCATION TO BE SEARCHED</u>

3

4

5

This warrant applies to information associated with areed8821@yahoo.com that is stored at premises owned, maintained, controlled, or operated by Yahoo Holdings, Inc., a company headquartered at 701 First Avenue, Sunnyvale, CA, 94089.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT B

## ITEMS TO BE SEIZED

### I. Information to be disclosed by Yahoo Holdings, Inc. ("Yahoo")

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo, including any communications, records, files, logs, or information that has been deleted but is still available to Yahoo, Yahoo is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. The contents of all emails, chats, or stored communications associated with the account, including stored or preserved copies of emails or chats sent to and from the account, draft emails, deleted emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email or chat;

b. All records or other information regarding the identification of the account, including full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative or secondary email addresses, methods of connecting, log files, and means and source of payment (including any credit or bank account numbers);

c. The types of service utilized.

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files.

e. Any and all stored images or video linked to the services, to include metadata included by the customer.

f.   Internet search and browsing history and location history associated with the account.

g.   All records pertaining to communications between Yahoo and any person regarding the account, including contacts with support services and records of actions taken.

h.   For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

## II. Information to be seized by the government

The following items, which may be evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252 and 2252A and/or contraband, involving TARGET ACCOUNT, Aaron REED and occurring between January 1, 2012, and October 31, 2015, are to be searched and/or seized wherever they may be stored or found at the location to be searched and in any form that they may be stored or found:

1. Evidence of ownership of control of specified email, areed8821@yahoo.com;

2. Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

3. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

4. Any evidence related to the registration and operation of Kik accounts or other messaging applications;

5. The identity of the person(s) who communicated with the user ID areed8821@yahoo.com, about matters relating to the possession, distribution or production of child pornography;

6. All screen names, user names, and true names of others who may have operated as the source of child pornography or visual depictions of minors engaged in

sexually explicit conduct, in any format, downloaded and possessed by the person(s) operating the TARGET ACCOUNT;

7. Any items, images, documents, communications, records, and information related to the distribution, receipt or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct;

8. Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form

9. Any child erotica;

10. Any information pertaining to any individual's interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica;